NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERM OF PARENTAL RIGHTS AS TO E.R.

No. 1 CA-JV 23-0211
FILED 4-30-2024

---

Appeal from the Superior Court in Maricopa County
No. JD534218
The Honorable Joshua D. Rogers, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Ken Sanders
*Co-Counsel for Appellee, Department of Child Safety*

The Huff Law Firm, PLLC, Tucson
By Daniel R. Huff, Laura J. Huff
*Co-Counsel for Appellee, Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Appellee Child*

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

C A M P B E L L, Judge:

¶1            Mother appeals the termination of her parental rights to her daughter, Erica,[1] born in July 2021. The juvenile court terminated the parent-child relationship based on six months' time-in-care, fifteen months' time-in-care, and length of felony sentence grounds, as well as finding that termination was in the child's best interests. *See* A.R.S. § 8-533(A), -533(B)(8)(b)-(c), -533(B)(4). For the reasons below, we affirm.

### BACKGROUND

¶2            Both Mother and Father[2] have significant substance abuse histories. Mother began using drugs at age 15 and used various substances including heroin, methamphetamine, methadone, marijuana, and fentanyl. In 2019, she was arrested for, among other things, selling methamphetamine and heroin. Mother entered into a plea agreement, and she was placed on probation for seven years. She was required to participate in a drug assessment and attend substance-abuse treatment as recommended by the probation department. Around this time, Mother lost custody of her two older children as a result of being incarcerated and a subsequent divorce.[3]

¶3            Mother received substance-abuse treatment through Terros Health from July 2020 until she quit the program in January 2021. She reported that she then participated in substance-abuse treatment through Community Medical Services for about a month around the time of Erica's birth.

---

[1]        We use a pseudonym to protect the child's identity.
[2]        Father is not a party to this appeal.
[3]        Mother spent 47 days in jail before beginning probation on her 2019 charges. Her former husband gained custody of the two children during this time.

¶4            Mother and Father were living in a motel at the time of Erica's birth. Erica was born exposed to methamphetamine, amphetamine, fentanyl, and methadone. She spent her first week of life in the hospital being treated for withdrawal symptoms.

¶5            Mother tested positive for methamphetamine, fentanyl, amphetamines, and methadone at the time of Erica's birth. In her interview with the Department of Child Safety (DCS), she admitted using fentanyl every day of her pregnancy, including the day she went into labor. She reported she did not seek prenatal care because she was ashamed.

¶6            DCS released Erica from the hospital into her paternal aunt's care and filed a dependency petition. Mother did not contest the petition, and Erica was found dependent as to her in August 2021. The court adopted a family reunification case plan and affirmed Erica's placement with her aunt.

¶7            DCS directed Mother to participate in random drug testing. This required Mother to contact the testing provider to determine whether she would need to test that day. Mother successfully provided one urine sample on August 12, 2021, which tested positive for methadone. After August 18, 2021, Mother stopped calling the testing provider. Mother was also referred to Terros Health for a drug assessment and treatment. She completed intake at her home but did not engage in services, so her referral was closed. Mother was offered supervised visitation, but had only one visit with Erica before she was arrested and later incarcerated.

¶8            Mother was arrested in January 2022 for possession of methamphetamine, possession of drug paraphernalia, false reporting to law enforcement, and criminal trespass. At this point, she had not engaged in any services offered by DCS since her singular visit with Erica and her Terros Health intake in mid-August 2021. The criminal court revoked her probation and sentenced her to four years in the Arizona Department of Corrections (DOC). Mother's expected release date is January 2025.

¶9            Mother was transferred multiple times within the jail and the DOC, complicating visitation scheduling efforts. Still, DCS case managers and corrections officers worked to schedule visits between Mother and Erica twice per month. Mother had approximately five supervised and a few virtual visits with Erica during the dependency.

¶10           At a review hearing in April 2022, at DCS's request, the court changed the case plan to severance and adoption. DCS moved to terminate Mother's parental rights in May 2022 when Erica had been in care for ten

months. The original petition alleged substance abuse and six months' time in out-of-home placement as statutory grounds for termination. But because Mother began receiving and participating in substance-abuse treatment in prison, DCS amended its petition for termination in June 2023. DCS's amended termination removed the substance-abuse grounds but added fifteen months' time in care and Mother's length of felony sentence as additional statutory grounds for termination.

¶11　　　The court held a termination adjudication hearing in September 2023. The DCS case manager testified about Mother's failure to engage in substance-abuse treatment and random urinalysis testing before her incarceration. The case manager and Mother both testified about Erica's relationship with her aunt, who is her caregiver. Mother also testified she faced difficulties receiving visits with Erica, but agreed that the difficulties arose because of her incarceration.

¶12　　　At the end of the adjudication hearing, the court terminated Mother's parental rights based on Mother's length of felony sentence, six months' time in care, and fifteen months' time-in-care. The court also found termination was in Erica's best interests because of the success of her current placement, her prospective adoption by the paternal aunt, and Mother's history of failed sobriety. Mother timely appealed.

## DISCUSSION

¶13　　　Mother contends the court erred in terminating her parental rights because DCS: (1) failed to prove it provided her with diligent reunification efforts by clear and convincing evidence and (2) failed to prove termination was in Erica's best interests by a preponderance of the evidence.

¶14　　　A parent's right to custody and control of his or her own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). The juvenile court may terminate the parental relationship where (1) clear and convincing evidence shows the existence of a statutory ground for termination under A.R.S. § 8-533, and (2) a preponderance of the evidence shows that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, 288, ¶¶ 7, 41 (2005).

¶15　　　We accept the juvenile court's factual findings so long as they are supported by reasonable evidence and inferences, and we affirm the court's legal conclusions unless they are clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 278–79, ¶¶ 30–31 (2023). We do not

reweigh the evidence. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## I.      Diligent Reunification Efforts

**¶16**      Mother challenges DCS's reunification efforts for the first time on appeal. Because the juvenile court is in the best position to evaluate the adequacy of reunification efforts, a parent is precluded from challenging these efforts for the first time on appeal. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178–79, ¶ 16 (App. 2014). If Mother believed DCS was not making diligent efforts "at any point, it was incumbent on her to promptly bring those concerns to the attention of the juvenile court." *Id.* at 179, ¶ 18. Yet, even had this argument not been waived, the record supports the juvenile court's finding that DCS provided diligent reunification efforts in the form of substance-abuse treatment referrals, random urinalysis testing, and supervised visitation.

**¶17**      DCS may terminate a parent's rights to his or her child based on the child's time in an out-of-home placement. *See* A.R.S. § 8-533(B)(8). A child under the age of three who has been in an out-of-home placement for longer than six months may be permanently removed if the court finds "the parent has substantially neglected or willfully refused to remedy the circumstances" causing the placement. A.R.S. § 8-533(B)(8)(b). A child who has been in an out-of-home placement for longer than fifteen months may be permanently removed from the parent's care if the court finds "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement *and* there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c) (emphasis added). The agency responsible for the care of the child must make "a diligent effort to provide appropriate reunification services" to the family. A.R.S. § 8-533(B)(8).

**¶18**      DCS has a statutory and constitutional obligation to make these reasonable efforts to reunify the family. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 19 (App. 2009). Reasonable or diligent efforts have been made if DCS provides the parent "with the time and opportunity to participate in programs designed to help her to become an effective parent." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) (citation omitted). DCS need not provide futile efforts, only those "with a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). Difficulties receiving reunification services because of incarceration are not imputed to DCS—"[t]he court can

certainly consider that incarceration will as a practical matter typically preclude all but minimal visits." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451, ¶ 17 (App. 2007).

**¶19** Mother was offered a myriad of services, including supervised visitation, drug testing, and referrals for substance-abuse treatment. Mother was offered these services before her incarceration and declined to meaningfully participate in them. The juvenile court properly considered how Mother had "difficulties nurturing her relationship with [Erica] when she did *not* have the significant impediment of incarceration." *See Christy C.*, 214 Ariz. at 451, ¶ 18. And, once incarcerated, Mother demonstrated her ability to engage in drug-treatment services, further proving her disengagement with services before her incarceration was because of her inaction, not DCS's reunification-service provision.

**¶20** Mother next points to visitation scheduling conflicts impairing her ability to form a bond with Erica. The DCS case manager testified about the reasons for the visitation conflicts which included Mother being transferred between facilities, Erica being ill, miscommunication on the part of corrections officers, and standard DOC visitation waitlist regulations. Mother's incarceration situation was to blame for missed visits, not DCS's lack of effort. We agree with the juvenile court: DCS provided "both reasonable and/or diligent efforts . . . to effectuate reunification of the family."

## II.     Best Interests

**¶21** Mother has similarly shown no error in the court's best-interests finding. To terminate a parental relationship, the court must find that termination is in the child's best interests by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 288, ¶ 41. Proof by a preponderance of the evidence is proof that a fact is more probable than not. *Id.* at 284, ¶ 25.

**¶22** The best interests of the child are analyzed under the totality of the circumstances, but the "child's interest in stability and security" is the primary concern. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, 150, ¶¶ 1, 12 (2018) (citation omitted). Termination is in the child's best interests if it will benefit the child, or if failure to terminate will harm the child. *Id.* at 150, ¶ 13. The court may consider the "immediate availability of an adoptive placement." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).

**¶23** The juvenile court found that Erica's paternal aunt "is providing [her] with a loving and nurturing home environment" and that

Erica is "thriving" in her care. She has confirmed that she is ready and willing to adopt Erica as soon as adoption is possible. The record establishes that Erica's interests in safety and security are best supported by placement with her paternal aunt. "In proving severance is in the children's best interests, DCS must show either that severance affirmatively benefits the children (such as showing they are adoptable or more stable in an existing placement), or eliminates a detriment to the children if the parent-child relationship is not severed." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016).

**¶24**　　　　In contrast, as the juvenile court found, preserving Mother's parent-child relationship with Erica would be detrimental because it "could expose [Erica] to further abuse and neglect" resulting from Mother's inability to "safely and appropriately care for, protect, and meet [Erica's] needs." "The interests in permanency for [the child] must prevail over [Mother's] uncertain battle with drugs." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 383, ¶ 29 (App. 2010) (citation omitted). Mother's history of repeated, failed attempts at sobriety and her incarceration serve as barriers to Erica's stability and are detrimental to permanency, which is in the child's best interests. It follows that Erica's best interests are served by severance.

**¶25**　　　　Finally, Mother argues that it is in Erica's best interests to maintain a relationship with her biological siblings. But sibling relationships are just one factor for the court to consider. *See Audra T.*, 194 Ariz. at 378, ¶ 6 (finding placement with biological sister a factor in support of best-interests finding). Here, Mother does not have a significant relationship with her two older children, having lost custody over them in 2018. She had little contact with them even before her incarceration in 2022. Erica would likely not have contact with her biological siblings even if Mother were to retain parental rights. As such, the court's best-interests finding was supported by a preponderance of the trial evidence.

**CONCLUSION**

**¶26**　　　　We affirm.



AMY M. WOOD • Clerk of the Court
FILED:　AA